IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JEFFREY TOMBACK,

    PLAINTIFF,

  v.

UNUMPROVIDENT CORPORATION; PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY; THE COMMISSIONER OF THE CALIFORNIA DEPARTMENT OF INSURANCE and DOES 1 through 50, inclusive,

    Defendants.
_____/

No. C 05-3157 CW

ORDER GRANTING PLAINTIFF'S MOTION FOR REMAND

Defendants Provident Life and Accident Insurance Company (Provident) and UnumProvident Corporation (Unum) (collectively, Removing Defendants) removed this disability insurance action to federal court.  Plaintiff moves for remand to State court, pointing to the absence of complete diversity created by the Commissioner of the California Department of Insurance as a named defendant. Removing Defendants oppose this motion, arguing that: 1) diversity cannot be destroyed by the Commissioner sued in his official capacity; 2) Plaintiff's claims against the Commissioner were made in bad faith; and 3) all claims against the Commissioner are either time-barred or fail to state a cause of action.  The matter has

been submitted on the papers.  Having considered all of the papers filed by the parties, the Court GRANTS Plaintiff's motion to remand.

## BACKGROUND

On January 18 1986, Defendant Provident issued a disability insurance policy to Plaintiff.  Provident is now a wholly owned subsidiary of Unum, a corporation organized and existing under the laws of Delaware, with its principal places of business in Chattanooga, Tennessee and Portland, Maine.  In letter dated February 6, 2004, Unum ultimately rejected a disability benefits claim made by Plaintiff.  On June 23, 2005, Plaintiff filed suit in San Francisco County Superior Court, alleging State law causes of action against Removing Defendants for wrongfully denying him benefits under the disability policy.  Plaintiff also brought suit against the Commissioner in his official capacity, requesting a writ of mandamus ordering the Commissioner to revoke his approval of the disability policy.  On August 4, 2005, Removing Defendants, claiming diversity jurisdiction, removed the complaint to federal court pursuant to 28 U.S.C. § 1441(a).  Plaintiff seeks remand.

## LEGAL STANDARD

A defendant may remove a civil action filed in State court to federal district court so long as the district court could have exercised original jurisdiction over the matter.  28 U.S.C. § 1441(a).  Title 28 U.S.C. § 1447(c) provides that, if at any time before judgment it appears that the district court lacks subject matter jurisdiction over a case previously removed from State court, the case must be remanded.  On a motion to remand, the scope

2

of the removal statute must be strictly construed. Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992). "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." Id. Courts should resolve doubts as to removability in favor of remanding the case to State court. Id.

District courts have original jurisdiction over all civil actions "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a). When federal subject matter jurisdiction is predicated on diversity of citizenship, complete diversity must exist between the opposing parties. Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 373-74 (1978).

A defendant may remove a case with a non-diverse defendant on the basis of diversity jurisdiction and seek to persuade the district court that this defendant was fraudulently joined. McCabe v. Gen. Foods Corp., 811 F.2d 1336, 1339 (9th Cir. 1987). "If the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent." Id. The burden of the defendant is not to show that the joinder of the non-diverse party was for the purpose of preventing removal because "it is universally thought that the motive for joining such a defendant is immaterial." Albi v. Street & Smith Publ'ns, 140 F.2d 310, 312 (9th Cir. 1944). Instead, the defendant must demonstrate that there is no possibility that the

3

plaintiff will be able to establish a cause of action in State court against the alleged sham defendant.  Id.; see also Ritchey v. Upjohn Drug Co., 139 F.3d 1313, 1318 (9th Cir. 1998).  Allegations of the presence of a sham defendant can only succeed upon a showing that there is an obvious failure to assert a cause of action against that defendant under well-settled rules of State law. United Computer Sys., Inc. v. AT & T Corp., 298 F.3d 756, 761 (9th Cir. 2002); Morris v. Princess Cruises, Inc., 236 F.3d 1061, 1067 (9th Cir. 2001); see also Dodson v. Spiliada Maritime Corp., 951 F.2d 42, 43 (5th Cir. 1992) ("In evaluating fraudulent joinder claims, we must initially resolve . . . all ambiguities in the controlling state law in favor of the non-removing party.")

DISCUSSION

I.  The Commissioner as a Named Defendant Precludes Diversity Jurisdiction

Removing Defendants argue that, because they are not citizens of California and because the Commissioner has no citizenship for diversity purposes, diversity jurisdiction is proper in this case. This argument is based on two premises.  First, Removing Defendants correctly point out that the Commissioner, in his official capacity, is not a "citizen of California."  See Morongo Band of Mission Indians v. California State Bd. of Equalization, 858 F.2d 1376, 1382 n.5 (9th Cir. 1998) (State officers have "no citizenship" for purposes of 28 U.S.C. § 1332).  Second, Removing Defendants contend that the Commissioner, as a non-citizen, should be ignored for the purposes of analyzing diversity jurisdiction. This is incorrect.

4

Removing Defendants concede that "a lawsuit against a state officer acting in his official capacity is treated as a suit against the state itself, for which there is no diversity jurisdiction." Defs.' Opp. at 6; see also Schwarzer et al., Federal Civil Procedure Before Trial § 2:247. However, Removing Defendants argue that, although an official-capacity defendant's citizenship (or more precisely, lack thereof) "cannot be asserted as a basis for establishing diversity" by plaintiffs, the same lack of citizenship should not be allowed "to destroy diversity" when defendants seek to remove to federal court. Defs.' Opp. at 6 (emphasis in original).

Removing Defendants' distinction has no basis in the text of the removal statute or any precedent in this or any other circuit. Although infrequently raised, Removing Defendants' novel argument has been rejected by other courts. Jakoubek v. Fortis Benefits Ins. Co., 301 F. Supp. 2d 1045, 1049 (D. Neb. 2003); Batton v. Georgia Gulf, 261 F. Supp. 2d 575, 583 (M.D. La. 2003); see also California v. Steelcase Inc., 792 F. Supp 84, 86 (C.D. Cal 1992) ("[F]or diversity purposes, a state is not a citizen of itself. Therefore, it cannot sue or be sued in a diversity action.").

In Batton, the court rejected an argument identical to that raised by Removing Defendants after examining the diversity statute and concluding, "Nowhere is there any provision allowing diversity jurisdiction where a non-citizen state is a party. Clearly, Congress contemplated the situation of non-citizens and specifically allowed for suits by those non-citizens it thought appropriate." 261 F. Supp. 2d at 582. The court in Jakoubek

5

similarly found the plain language of the statute dispositive, stating that "28 U.S.C. § 1332(a)(1) grants federal diversity jurisdiction only when plaintiffs and defendants are citizens of different states. Since the State defendants are not citizens, they and the plaintiff cannot be citizens of different states." 301 F. Supp. 2d at 1049. The Court agrees with the reasoning of the Batton and Jakoubek courts and concludes that diversity jurisdiction does not exist here because the Commissioner, a non-citizen, is a defendant.

Removing Defendants mistakenly point to Garamendi v. Allstate, 47 F.3d 350 (9th Cir. 1995) and American Re-Insurance Company v. Insurance Commissioner of the State of California, 527 F. Supp. 444 (C.D. Cal 1981), in an attempt to contradict the principle that diversity jurisdiction is normally improper for official capacity suits. These cases are distinguishable, however, because, as indicated in the captions of each case, the Commissioner was sued in his capacity as liquidator of the respective insurance companies. See Allstate, 47 F.3d at 350 ("GARAMENDI, Insurance Commissioner of the State of California, in his capacity as Liquidator of Mission Insurance Company"); Am. Re-Insurance Co., 527 F. Supp. at 444 ("The INSURANCE COMMISSION OF the STATE OF CALIFORNIA, as liquidator of Signal Insurance Company and of Imperial Insurance Company").

The existence of diversity of citizenship jurisdiction is based on an examination of the citizenship of the real parties in interest. Navarro Sav. Ass'n v. Lee, 446 U.S. 458, 460-61 (1980). Because the real party in interest in suits involving a State

6

1 official as liquidator is the company itself, such suits may
2 proceed under diversity jurisdiction. <u>General Ry. Signal Co. v.</u>
3 <u>Corcoran</u>, 921 F.2d 700, 705 n.3 (7th Cir. 1991). Thus, although
4 the basis of diversity jurisdiction went unaddressed in <u>Garamendi</u>
5 and <u>American Re-Insurance Company</u> because diversity was
6 unchallenged, it seems likely that these courts simply applied the
7 settled rule that "[t]he addition to a lawsuit of a purely nominal
8 party--the holder of the stakes of the dispute between the
9 plaintiff and the original defendant--does not affect diversity
10 jurisdiction." <u>Prudential Real Estate Affiliates, Inc. v. PPR</u>
11 <u>Realty, Inc.</u>, 204 F.3d 867, 873 (9th Cir. 2000) (quoting <u>Matchett</u>
12 <u>v. Wold</u>, 818 F.2d 574, 576 (7th Cir. 1987).

13 Removing Defendants argue that the fact that the Commissioner
14 was acting as a liquidator in <u>Garamendi</u> and <u>American Re-Insurance</u>
15 provides no basis for reasoned distinction. Citing <u>Garris v.</u>
16 <u>Carpenter</u>, 33 Cal. App. 2d 649, 656 (1939), Removing Defendants
17 argue that the Commissioner as liquidator acts in his official
18 capacity "in behalf of the state." <u>See also</u> Cal. Ins. Code § 1059
19 (in performance of any of his statutory duties the Commissioner
20 "shall be deemed to be a public officer acting in his official
21 capacity on behalf of the State"). However, the fact that the
22 Commissioner as liquidator acts in his official capacity on behalf
23 of the State does not settle whether he is a nominal party for
24 purposes of diversity. <u>See</u> <u>General Ry. Signal Co.</u>, 921 F.2d at 705
25 n.3 (official as liquidator nominal party to diversity suit).

26 The <u>Garris</u> case cited by Removing Defendants supports the
27 proposition that the Commissioner as liquidator may be a nominal

28 7

party because he acts merely as "holder of the stakes of the dispute." Prudential Real Estate Affiliates, Inc., 204 F.3d at 873; see Garris, 33 Cal. App. 2d at 655 (in his role as liquidator, the Commissioner's function "is that of a minister of the court in possession of the property, to the end of conserving the rights of everybody having any interest.")  Removing Defendants do not argue, nor could they, that the Commissioner is a nominal party in this case.  Therefore, because there is no evidence that the courts in Garamendi and American Re-Insurance Company developed a new exception to settled diversity jurisdiction jurisprudence, the Court declines to interpret these cases to allow diversity jurisdiction in this case.

II.  Fraudulent Joinder

Despite the absence of complete diversity, Removing Defendants may proceed on the basis of diversity jurisdiction if they can demonstrate that the Commissioner was fraudulently joined.  McCabe, 811 F.2d at 1339.

A. Bad Faith

Removing Defendants contend that Plaintiff's counsel routinely joins the Commissioner in insurance cases in order to avoid federal court, without ever pursuing legal redress or even initiating discovery in the claims against him.  Removing Defendants support this contention by citing other cases in which Plaintiff's counsel, Plaintiff's counsel's firm and one other unidentified plaintiffs' firm filed suits against Removing Defendants (or other non-resident insurance companies) and the Commissioner or other State officials.  They state that counsel never pursued claims alleged against the

8

Commissioner or State officials in these cases. Hockel Decl. at 2-6. Removing Defendants also claim that Plaintiff's counsel's dismissal of an unrelated insurance case before another judge of this Court, who had previously ruled against Plaintiff's counsel on a similar remand issue, evidences forum-shopping. Id., Exs. C, D, F. In light of this evidence, Removing Defendants argue that the joinder of the Commissioner was in bad faith and therefore fraudulent. However, as noted above, this circuit has foreclosed analysis of a plaintiff's intentions in cases of alleged fraudulent joinder:

> It is universally thought that the motive for joining . . . a defendant is immaterial. It is only where the plaintiff has not, in fact, a cause of action against the . . . defendant, and has no reasonable ground for supposing he has, and yet joins him in order to evade the jurisdiction of the federal court, that the joinder can be said to be fraudulent, entitling the real defendant to a removal.

Albi, 140 F.2d at 312.

In other words, "the phrase 'fraudulent joinder' is something of a misnomer. It is a term of art; it . . . is merely the rubric applied when a court finds either that no cause of action is stated against the nondiverse Defendant, or in fact no cause of action exists." Grennell v. Western Southern Life Ins. Co., 298 F. Supp. 2d 390, 394 n.5 (S.D. W. Va. 2004); see also McCabe, 811 F.2d at 1139 ("Fraudulent joinder is a term of art. If the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent.")

Removing Defendants' reliance on the statement in Rock Island

9

& Pacific Railway Company v. Schwyart, suggesting that the Court will examine whether a plaintiff has a "real intention to get a . . . judgment," is unavailing. 227 U.S. 184, 194 (1913). The analysis in that case addressed whether or not the plaintiff had a viable claim and the Court made clear that "the motive of the plaintiff, taken by itself, does not affect the right to remove." Id. at 193. In Wilson v. Republican Iron & Steel Company, also cited by Removing Defendants, the Court found fraudulent joinder based upon undisputed allegations that the plaintiff "knew all along, [that the non-diverse defendant] was not guilty of any joint negligence with the [diverse defendant], was not present when the plaintiff's injuries were received, and did no act or deed which caused or contributed to such injuries." 257 U.S. 92, 94, 98 (1921). The Court noted that the defendants could establish fraudulent joinder by showing that claims against the non-diverse defendant were "without any reasonable basis in fact and without any purpose to prosecute the cause in good faith." 257 U.S. 92, 98 (1921).

Because the Wilson Court required both an absence of any reasonable basis for the suit and no intention to prosecute, it is not in conflict with the statement in Rock Island that "the motive of the plaintiff, taken by itself, does not affect the right to remove." 227 U.S. at 193.[1]  Removing Defendants have not

---

[1] To the extent that Lewis v. Time, Inc. reads the "and" in Wilson as an "or" it is not persuasive. 83 F.R.D. 455, 465 (C.D. Cal. 1979) (stating "a joinder is also fraudulent although a cause of action is stated if in fact no cause of action exists, or there is no intention to secure a joint judgment" and finding that the tenuous nature of plaintiff's claim along with evidence of last-

10

established that Plaintiff's claim against the Commissioner has no reasonable basis in fact, and have not satisfied the <u>Wilson</u> test. Therefore, the Court concludes that evidence of Plaintiff's counsel's alleged lack of intention to pursue relief against the Commissioner does not establish fraudulent joinder.

B.  Failure to State a Claim

Removing Defendants contend that Plaintiff has failed to state a claim for a writ of mandamus against the Commissioner. Removing Defendants argue that, because the Commissioner's decision to approve the insurance policy occurred in approximately January, 1986, the month Plaintiff's insurance policy issued, and Plaintiff's complaint was not filed until June 23, 2005, Plaintiff's request for a writ of mandamus against the Commissioner is barred by the statute of limitations. The Court must therefore address the manner in which the Commissioner's decisions are reviewed under California law.

---

minute joinder of a California corporation solely for the purpose of defeating diversity established fraudulent joinder). The correct standard is delineated elsewhere in that case. <u>See</u> <u>id.</u> at 460 ("'Fraudulent joinder' is a term of art, it does not reflect on the integrity of plaintiff or counsel but is merely the rubric applied when a court finds either that no cause of action is stated against the nondiverse defendant, or in fact no cause of action exists. In other words, a joinder is fraudulent if there is no real intention to get a joint judgment, and there is no colorable ground for so claiming.") (citations and alterations omitted). The Third Circuit precedent relied upon by Removing Defendants, <u>Batoff v. State Farm Ins. Co.</u>, 977 F.2d 848, 851 (3d Cir. 1992), traces back to similar misinterpretation of <u>Wilson</u> by a California district court. <u>See</u> <u>Abels v. State Farm Fire & Cas. Co.</u>, 770 F.2d 26 (3d Cir. 1985) (citing <u>Goldberg v. CPC International, Inc.</u>, 495 F. Supp. 233 239 (N.D. Cal. 1980)). However, the <u>Goldberg</u> court provides no support for Removing Defendants' theory. <u>See</u> <u>id.</u> at 239 ("It is immaterial that plaintiff may have been motivated by a purpose to defeat removal.")

11

1.   Judicial Review of Commissioner's Decisions

The issuance of a disability policy in California requires approval from the Commissioner. <u>Van Ness v. Blue Cross of California</u>, 87 Cal. App. 4th 364, 368 (2001); <u>see</u> <u>also</u> Cal. Ins. Code § 10290. The Commissioner may give explicit endorsement to a policy by "written approval" or implicit consent by failing to act within thirty days of receipt of the copy of the policy that must be sent to the Commissioner by the insurer. <u>Id.</u> The Commissioner may also, with good cause, revoke approval for any policy that does not comply with the California Insurance Code. 10 Cal. Code Regs. § 2196.4(a). The Commissioner's actions are subject to judicial review pursuant to California Insurance Code § 12940. Review of the Commissioner's decision to approve an insurance policy is governed by the California Code of Civil Procedure. Cal. Ins. Code § 10295.1(h).

The California Code of Civil Procedure allows a writ of mandamus to be issued "by any court to any . . . person, to compel the performance of an act which the law specifically enjoins, as a duty resulting from an office, trust or station." Cal. Code Civ. Proc. § 1085(a). The Commissioner is thus subject to the writ due to the requirement that he "perform all duties imposed on him or her by the [Insurance Code] and other laws regulating the business of insurance" and "enforce the execution of those provisions and laws." Cal. Ins. Code § 12921(a).

In his complaint, Plaintiff seeks an order mandating that the Commissioner perform the duties imposed upon him by law to correct the disability policy so that it conforms with California State law

12

1 and to revoke his original approval of the disability policy.
2 Compl. at 24, 25.  Ninth Circuit and California case law suggests
3 that such a writ is proper and Removing Defendants do not contest
4 the use of the writ in this case.  See Peterson v. American Life &
5 Health Ins. Co., 48 F.3d 404, 410 (9th Cir. 1995) (plaintiff "may
6 petition for a writ of mandamus requiring the Commissioner to
7 revoke his approval"); Van Ness, 87 Cal. App. 4th at 371-72
8 (insured may petition for a writ of mandamus requiring the
9 commission to revoke approval).

### 2. Statute of Limitations

To determine the applicable statute of limitations for a writ of mandamus, the Court must turn to California State law. California Insurance Code § 10291.5(h) states that:

> any action taken by the commissioner under this section is subject to review by the courts of this state and proceedings on review shall be in accordance with the Code of Civil Procedure.  Notwithstanding any other provision of law to the contrary, petition for any such review may be filed at any time before the effective date of the action taken by the commissioner.

Removing Defendants argue that, because section 10291.5(h) does not supply its own statute of limitations, the applicable statute of limitations is the three-year limitation provided by California Code of Civil Procedure § 338(a) for "an action upon a liability created by statute."  Plaintiff presents no alternative statute of limitations.  However, Plaintiff disputes Removing Defendants' contention that it is the Commissioner's approval of the policy which triggers the running of the statutory clock.

No California decisions directly address this issue.  However, at least five judges in this District have addressed the statute of

13

limitations for this precise application of the writ of mandamus. Only one district court found that the statute of limitations began to run on the date of the Commissioner's approval of a policy. See Borsuk v. Massachusetts Mut. Life Ins. Co., No. C-03-630 VRW (Def. Ex. F). The remaining four courts were unwilling to hold categorically that the statutory clock began to run on the date of the Commissioner's approval because a plaintiff may not have sufficient notice of his or her injury until the insurance company rejects the claim. See Brazina v. Paul Revere Life Ins. Co., 271 F. Supp. 2d 1163 (N.D. Cal. 2003); Sullivan v. Unum Life Ins. Co. of Amer., 2004 WL 828561 (N.D. Cal. 2004); Glick v. UnumProvident Corp., No. C 03-4025 WHA (N.D. Cal. 2004); Maiolino v. UnumProvident Corp., 2004 WL 941235 (N.D. Cal. 2004).

In finding that the statute of limitations had expired, the Borsuk court summarily concluded that "Borsuk was on notice . . . no later than . . . the date he agreed to the terms of the policy" and that the statute began to run either on the date of that agreement or on the date the Commissioner approved the policy. Borsuk at 18. Because the Borsuk court did not provide the basis for its decision on this matter, the Court finds that decision unpersuasive.

In Brazina, the court did not address the triggering of the statute of limitations directly, but did reject the defendants' argument that the writ of mandamus was unavailable at any time after the effective date of the Commissioner's decision. 271 F. Supp. 2d at 1170 (citing Econ. Empowerment Found. v. Quackenbush, 65 Cal. App. 4th 1397, 1402 (1998)). Despite the fact that the

14

1  plaintiff filed suit fourteen years after the issuance of the
2  policy, the Brazina court stated that "it seems likely that a
3  California court would interpret the language [of section
4  10291.5(h)] to allow this action to proceed." Id. at 1171.
5       Sullivan, Maiolino, and Glick directly addressed the statute
6  of limitations and, finding the issue of when the statute begins to
7  run to be uncertain, construed the ambiguity in favor of granting
8  remand because a cause of action had been stated. In Sullivan, the
9  court concluded, "It seems unfair to hold categorically that
10 Plaintiff had notice of the way defendants would administer the
11 policy before Unum denied him benefits" and therefore decided that
12 a claim had been stated and remand was appropriate because the
13 complaint had been filed within three years of the denial of
14 benefits. 2004 WL 828561 at *4. Maiolino and Glick adopted
15 similar reasoning. Maiolino 2004 WL 941235 at *5 (granting remand
16 in the absence of well-settled rules of State law on the statute of
17 limitations issue); Glick, at 3-4 (noting that although defendants'
18 contention that the statute of limitations had expired might
19 ultimately prevail in State court, defendants had not met their
20 high burden of establishing the absence of a viable claim against
21 the Commissioner.)
22      The reasoning of these cases is blostered by California State
23 law, which states that a cause of action accrues "upon the
24 occurrence of the last element essential to the cause of action,"
25 Howard Jarvis Taxpayers Ass'n v. City of La Habra, 25 Cal. 4th 809,
26 815 (2001), and that the event triggering the statute of
27 limitations may be modified "where it would be manifestly unjust to

15

deprive a plaintiff of a cause of action before he is aware he has been injured." Mangini v. Aerojet-General Corp., 230 Cal. App. 3d 1125, 1150 (1991).  As noted by the Sullivan court, it is doubtful that insurance policy holders would be aware of the harm posed by the Commissioner's approval of ambiguous terms in their policies before they "had notice of the way [insurers] would administer the policy" to deny them benefits.  Sullivan, 2004 WL 828561 at *4. Furthermore, it is unreasonable to assume that policy holders would be "put on notice" of the injury caused by the Commissioner's approval of an illegal policy simply by his inaction (i.e. his failure to act to disapprove of the policy within thirty days). See Cal. Ins. Code § 10290(b).

These observations are not to suggest that Plaintiff will necessarily succeed in persuading a State court to follow his suggested application of the statute of limitations.  However, because of the unsettled nature of State law, the Court must construe ambiguities in favor of remand.  See Dodson, 951 F.2d at 43.  Therefore, the Court cannot find that on the face of the pleading Plaintiff's claim for a writ of mandate is barred by the statute of limitations.[2]

Because Plaintiff has asserted a viable claim against the Commissioner under State law, and because the Commissioner's presence in this suit destroys the diversity of citizenship required for removal, the Court has no jurisdiction over this case.

---

[2] Because the Court finds in Plaintiff's favor on this issue, the Court declines to address Plaintiff's argument that Removing Defendants' notice of removal is procedurally defective due to their failure to secure the consent of the Commissioner.

16

CONCLUSION

Based on the foregoing, Plaintiff's motion for remand is GRANTED.

IT IS SO ORDERED.

Dated: 10/13/05

CLAUDIA WILKEN
United States District Judge

17